```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
JAMES ABATE, et al.,                                  :
                                                      :
                              Plaintiffs,             :
                                                      :              13-CV-9078 (VSB)
             - against -                              :
                                                      :              **OPINION & ORDER**
                                                      :
FIFTH THIRD BANK,                                     :
                                                      :
                              Defendant.              :
                                                      :
------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/27/2018

Appearances:

Joshua D. Rievman
Cohen Tauber Spievack & Wagner, P.C.
New York, NY

Marc A. Melzer
Katelyn K. Brooks
Sarah K. Logue
Hoguet Newman Regal & Kenney, LLP
New York, NY
*Counsel for Plaintiffs*

James S. O'Brien, Jr.
Andrew M. Goldsmith
Pryor Cashman LLP
New York, NY

Christopher N. Gray
Reed Smith LLP
New York, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

  Plaintiffs James Abate, Andrew Bang, and D. Wayne Robinson (together, "Plaintiffs"),

former holders of membership interests in Drexel Hamilton Investment Partners, LLC ("DHIP"),

bring this action against Defendant Fifth Third Bank ("Fifth Third" or "Defendant") asserting

claims for promissory estoppel, fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing, all premised on Fifth Third's failure to provide a loan to DHIP. Before me is Defendant's motion for summary judgment on all of Plaintiffs' claims. (Doc. 85.) Because there is no genuine dispute of material fact relating to Plaintiffs' claims, and Plaintiffs are not entitled to bring these claims individually as a matter of law, Defendant's motion for summary judgment is GRANTED.

I. **Background**[1]

DHIP was a start-up asset management company formed in October 2010. (Consol. 56.1 ¶¶ 20–22.)[2] DHIP contracted out certain of the day-to-day management of its investment portfolio to Centre Asset Management, LLC ("Centre"). (*Id.* ¶¶ 23–24.) Abate founded Centre in 2005. (*Id.* ¶ 27.) In 2010 Abate caused Centre to sell a 63.2% equity interest in the company to Sanlam International Investments USA Holdings, Inc. ("Sanlam USA"). (*Id.* ¶¶ 27–28.) Sanlam USA was created to hold the interest in Centre. (*Id.* ¶ 29.) As of August 2013, Abate held a 25.6% equity interest in Centre. (*Id.* ¶ 30.) At all relevant times, Abate served as Centre's managing director and chief investment officer. (*Id.* ¶ 27.) Abate was also president of Sanlam USA, a wholly-owned subsidiary of Sanlam Limited (together with Sanlam USA, "Sanlam"), a South African company listed on the Johannesburg Stock Exchange. (*Id.* ¶¶ 28–29, 31–32.) In June 2011, Centre loaned DHIP approximately $600,000 through a line of credit and provided DHIP with $120,000 in capital. (*Id.* ¶¶ 33–36.) In or about October 2012, "Sanlam advised

---

[1] The facts stated in this section are undisputed unless otherwise indicated.

[2] "Consol. 56.1" refers to the Consolidated Rule 56.1 Statement and Supplemental Statement of Undisputed Facts, dated April 27, 2017 ("Consolidated 56.1 Statement"). (Doc. 106.) In compliance with my Individual Rule, the Consolidated 56.1 Statement aggregates Defendant's statements and Plaintiffs' responses, and thus references in this Opinion and Order to individual paragraphs are to Defendant's statements and Plaintiffs' responses, or some combination thereof. While Plaintiffs also submitted a supplemental statement of undisputed facts, to which Defendant provided a response, my analysis does not depend on these statements and I therefore do not reference the supplemental statement in this Opinion and Order.

2

DHIP that it no longer intended to fund DHIP—indirectly through Centre or otherwise—after the line of credit from Centre matured," (*id.* ¶ 40), in May 2013. DHIP obtained a limited period of forbearance such that the line of credit from Centre matured on June 30, 2013, at which point "DHIP defaulted on its payment obligations." (*Id.* ¶ 41.) As of August 13, 2013, DHIP had "significant payables to many vendors/service providers, some over 10 months and most over 6 months past due." (*Id.* ¶ 42.)

In or around March 2013, DHIP and Fifth Third began discussing the possibility of Fifth Third providing a revolving line of credit ("RLOC") to DHIP. (*Id.* ¶ 57.) On March 19, 2013, DHIP requested "a loan of $2.63 million from Fifth Third Bank in order to further grow its business." (*Id.* ¶ 62.) The amount of the loan request changed over time and was ultimately fixed at $900,000. (*Id.* ¶ 59.)[3] DHIP explained that it planned to use the loan proceeds to, among other things, hire additional employees, launch additional funds, and satisfy working capital and expense needs. (*Id.* ¶ 63.) DHIP sought the loan from Fifth Third for itself and not for Plaintiffs, and it was understood that the loan proceeds would have been issued to DHIP. (*Id.* ¶ 64.)

During the RLOC negotiations, Fifth Third informed DHIP that the loan would need to be "guarantor reliant" and requested personal guarantees from the members of DHIP. (*See id.* ¶¶ 65–66.) DHIP responded that its partners were "not available for additional investment or to provide financial capacity or guarantees for this loan" and instead suggested that Fifth Third accept a third-party guarantee from Sanlam USA. (*Id.* ¶¶ 66–68.) However, Fifth Third was not willing to accept a third-party guarantee and instead insisted upon one hundred percent cash collateral. (*Id.* ¶ 69.)

---

[3] Plaintiffs claim that the documents cited by Fifth Third do not support this fact. (*Id.* ¶ 59.)

On July 12, 2013, DHIP agreed to provide one hundred percent cash collateral for the $900,000 line of credit, with $300,000 in cash to be provided by Plaintiff Abate and $600,000 in cash to be pledged by Sanlam. (*Id.* ¶ 76.) Fifth Third subsequently submitted DHIP's loan application to its underwriting team. (*Id.* ¶ 90.) As part of its due diligence, Fifth Third requested a corporate resolution authorizing Sanlam USA's pledge of cash to confirm that Sanlam USA knew of and approved the pledge. (*Id.* ¶ 93.)[4] On August 6, 2013, Abate provided Fifth Third with a corporate resolution from Sanlam USA that authorized Sanlam USA "to enter into the attached agreement." (*Id.* ¶¶ 94–95.)[5] The "attached agreement" referenced in the corporate resolution was between DHIP, its members, and Sanlam, and was dated July 12, 2013 (the "Sanlam Agreement"). (*Id.* ¶ 97.) As part of the Sanlam Agreement, Plaintiffs granted Sanlam "an option to purchase their membership interests in DHIP" for a nominal amount, upon the occurrence of certain trigger events, in consideration of Sanlam "providing the Guarantee," which the Sanlam Agreement defined as "a limited guarantee of DHIP's indebtedness to Fifth Third Bank up to $600,000." (*Id.* ¶ 105.) The Sanlam Agreement stipulated that the option to purchase Plaintiffs' membership interests in DHIP "shall remain in effect until any liability of Sanlam to Fifth Third Bank under the Guarantee has been extinguished." (*Id.* ¶ 106.)

According to Fifth Third, the Sanlam Agreement contained certain false representations and was not for a pledge of cash, but for a limited third-party guarantee, which Fifth Third had previously rejected. (*Id.* ¶¶ 98–100.) Fifth Third ultimately declined DHIP's loan application on August 13, 2013. (*Id.* ¶ 104.) Fifth Third rejected DHIP's loan application at least in part because it had concerns about the source of the funds to be pledged by Sanlam, was afraid that it

---

[4] Plaintiffs claim that the documents cited by Fifth Third do not support this fact. (*Id.* ¶ 93.)

[5] Abate intentionally failed to include a copy of the agreement referenced in the resolution, and only provided it after Fifth Third requested a copy. (*Id.* ¶ 95.)

4

might be unable to perfect its security interest with regard to cash collateral, and was concerned that the pledge of cash from Sanlam could be deemed a fraudulent conveyance due to the close relationship among DHIP, Centre, and Sanlam.  (*Id.*)

DHIP and Sanlam never had any "indebtedness" or "liability" to Fifth Third because Fifth Third never issued the RLOC to DHIP.  (*Id.* ¶¶ 102, 107.)  Therefore, the conditions necessary for the exercise of the "option" in the Sanlam Agreement related to the DHIP membership interests never came to fruition and Plaintiffs had no legal obligation to sell their membership interests.  (*Id.* ¶¶ 105–10.)

On August 21, 2013, DHIP held a conference call in which Plaintiffs and DHIP's other former members discussed three options regarding "how to move forward."  (*Id.* ¶ 115.)  The options included:  (1) a member capital call; (2) dissolution of DHIP; and (3) a possible merger/acquisition of DHIP whereby Centre would acquire DHIP's assets and assume its liabilities.  (*Id.* ¶ 116.)  Consistent with Abate's recommendation during the call, Plaintiffs and the other former members of DHIP agreed to implement option three and executed an agreement dated August 21, 2013 (the "August 2013 Agreement") in which they agreed to transfer their membership interests to Centre.  (*Id.* ¶¶ 121–22.)  The August 2013 Agreement provided, in part, that "DHIP and its Members hereby agree to voluntarily Jointly Transfer their Membership Interests to Centre whereby all Members approve the assignment to and substitution of Centre for 100% of Member units and associated rights, votes, privileges and economic interests."  (*Id.* ¶ 125.)  Bang, Robinson, and Jacobs each received $10 in consideration for their membership interests.  (*Id.* ¶ 128.)  Abate was to receive a payment equal to his capital account, or $378,093.60, but he "decided to waive any payment to, in essence, have Sanlam make an additional capital contribution in the same degree of proportionality to Centre Asset

5

Management." (*Id.* ¶ 129.) Plaintiffs ultimately agreed to transfer their membership interests to Centre because it presented a "better commercial outcome." (*Id.* ¶ 111.)

After DHIP's loan application was submitted for underwriting, DHIP advised Fifth Third in writing on at least four occasions that it could and would obtain financing from another bank—JPMorgan Chase ("JPM")—if Fifth Third did not approve DHIP's loan application, issue the loan documents, and disburse the loan proceeds. (*Id.* ¶¶ 130–34.) Plaintiffs claim that JPM indicated a willingness to provide a $900,000 loan to DHIP secured by $300,000 in cash collateral from Abate and $600,000 in cash collateral from Sanlam—similar to the terms negotiated by DHIP and Fifth Third. (*Id.* ¶¶ 135–37.) Fifth Third asserts that Sanlam never agreed to pledge cash collateral to JPM and only agreed to pledge such collateral to Fifth Third. (*Id.* ¶ 136.) Plaintiffs contend that as of late July Sanlam was willing to pledge $600,000 in cash collateral to JPM but on July 26, 2013, Abate stopped pursuing the JPM option after Fifth Third instructed him to do so and assured Plaintiffs of the loan's imminence. (*Id.*) As of August 6, 2013, Sanlam indicated that it hoped that the Fifth Third facility would get funded and that Sanlam "would not be willing [to] extend the loan any further or to provide security to a new bank." (*Id.*)

## II. Procedural History

Plaintiffs commenced this action by filing their Complaint on December 23, 2013. (Doc. 1.) Plaintiffs filed their First Amended Complaint on May 9, 2014. (Doc. 22.) Defendant filed a motion to dismiss the First Amended Complaint on June 20, 2014. (Doc. 28.) Plaintiffs filed an opposition to the motion to dismiss and Defendant filed a reply on July 18 and August 5, 2014, respectively. (Docs. 31, 32.) I denied the motion to dismiss on March 25, 2015. (Doc. 33.) Defendant filed its Answer to the First Amended Complaint on April 22, 2015. (Doc. 40.)

Defendant filed its motion for summary judgment on January 20, 2017, (Doc. 85), along with the declarations of Laura Russell and Philip Ottinger, (Docs. 86, 87), the declaration of James O'Brien with exhibits, (Doc. 88), Defendant's Local Civil Rule 56.1 Statement, (Doc. 89), and a memorandum of law in support of the motion, (Doc. 90). On March 27, 2017, Plaintiffs filed their memorandum of law in opposition to Defendant's motion, (Doc. 96), the declarations of James Abate, Andrew Bang, and D. Wayne Robinson, (Docs. 99, 100, 101), Plaintiffs' Local Civil Rule 56.1 Statement, (Doc. 102), and the declaration of Joshua Rievman with exhibits, (Doc. 72). On April 27, 2017, Defendant filed its reply memorandum of law in further support of its motion, (Doc. 107), the declaration of James O'Brien with exhibits, (Doc. 105), and consolidated Local Civil Rule 56.1 Statement, (Doc. 106), at which point the motion was fully submitted.[6]

### III. Legal Standard

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see also* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of

---

[6] On September 11, 2017, Defendant submitted a letter providing notice of supplemental authority regarding *Backus v. U3 Advisors, Inc.*, No. 1:16-cv-8990-GHW, 2017 WL 3600430 (S.D.N.Y. Aug. 18, 2017), (Doc. 108), and on September 19, 2017, Plaintiffs submitted a letter in response, (Doc. 109).

7

establishing that no genuine factual dispute exists; if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000). To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Finally, in considering a summary judgment motion, a court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

8

## IV. Discussion

Plaintiffs claim that Fifth Third through its actions "destroyed" DHIP, thereby rendering DHIP, and thus the value of Plaintiffs' membership interests in DHIP, worthless. (Am. Compl. ¶¶ 25, 108–09.)[7] Plaintiffs further contend that they have suffered in excess of $5 million in damages representing the "loss of [future] partner distributions" and forgone partners' compensation. (*Id.* ¶¶ 109–10, 118, 125, 136, 146.) Finally, Plaintiffs claim that the dissolution of DHIP caused harm to Plaintiffs' professional reputations. (*Id.* ¶¶ 111, 118, 125, 136, 146.) In response, Defendant asserts that Plaintiffs cannot personally recover for harm that Fifth Third allegedly caused to DHIP. Because I find that Plaintiffs' claims are derivative in nature and barred as a matter of law, I need not address the other bases for dismissal raised by Defendant. *See, e.g.*, *Lewin v. Lipper Convertibles*, 756 F. Supp. 2d 432, 440 (S.D.N.Y. 2010), *aff'd in part, vacated in part sub nom. CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114 (2d Cir. 2013).

### A. *Applicable Law*

"[A] stockholder has no individual cause of action against a person or entity that has injured the corporation. This is true notwithstanding that the wrongful acts may have diminished the value of the shares of the corporation, or that the shareholder incurs personal liability in an effort to maintain the solvency of the corporation."[8] *Serino v. Lipper*, 994 N.Y.S.2d 64, 68 (1st Dep't 2014); *see also Abrams v. Donati*, 489 N.E.2d 751, 751 (N.Y. 1985) ("For a wrong against a corporation a shareholder has no individual cause of action, though he loses the value of his

---

[7] "Am. Compl." refers to Plaintiffs' Amended Complaint, filed on May 9, 2014. (Doc. 22.)

[8] These principles apply with equal force to limited liability companies. *See, e.g.*¸ *Tzolis v. Wolff*, 829 N.Y.S.2d 488, 491 (1st Dep't 2007).

9

investment or incurs personal liability in an effort to maintain the solvency of the corporation.").[9] However, an exception to this principle exists where the wrongdoer has breached a duty owed directly to the shareholder that is independent of any duty owing to the corporation. *Serino*, 994 N.Y.S.2d at 69. "This is a narrow exception, and [a litigant's] claim must be factually supportable by more than complaints that conflate his derivative and individual rights." *Id.* In addition, a plaintiff may not obtain a recovery that otherwise duplicates or belongs to the corporation. *Herbert H. Post & Co. v. Sidney Bitterman, Inc.*, 639 N.Y.S.2d 329, 337 (1st Dep't 1996).

When analyzing whether a claim is derivative or direct, courts consider "(1) who suffered the alleged harm (the corporation or the stockholders); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders individually)." *Yudell v. Gilbert*, 949 N.Y.S.2d 380, 384 (1st Dep't 2012) (quoting *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004)); *see also Backus*, 2017 WL 3600430, at *16 (applying *Tooley* and dismissing breach of contract claim because "it is apparent that the complaint alleges injury to Plaintiff only in terms of the alleged harm to [the company]" and "the benefit of any recovery on this claim must flow solely to [the company]"). If there is any harm caused to the individual, as opposed to the corporation, then the individual may proceed with a direct action. *Gjuraj v. Uplift Elev. Corp.*, 973 N.Y.S.2d 172, 174 (1st Dep't 2013). "On the other hand, even where an individual harm is claimed, if it is confused with or embedded in the harm to the corporation, it cannot separately stand." *Serino*, 994 N.Y.S.2d at 69. In other words, "[t]he stockholder must demonstrate that . . . he or she can prevail without showing an injury to

---

[9] I apply New York law in light of the parties' consent to its application through their reliance on New York law in briefing this motion. *See, e.g.*, *Backus*, 2017 WL 3600430, at *9.

the corporation." *Yudell*, 949 N.Y.S.2d at 384 (citation omitted); *see also Amusement Indus., Inc. v. Stern*, No. 07 Civ. 11586(LAK)(GWG), 2010 WL 2976199, at *6 (S.D.N.Y. July 26, 2010) (noting that a claim is derivative if a plaintiff "cannot demonstrate any harm to himself for his causes of action without first demonstrating an injury to [the company]").

### B. *Application*

Applying the above principles to the undisputed facts of this case, it is clear that Plaintiffs assert derivative claims and seek to recover individually for injuries that DHIP purportedly suffered in the first instance. Because Plaintiffs relinquished their membership interests in DHIP, they cannot pursue a derivative suit on behalf of DHIP.

It is fundamental that "loss of investment value [] affects all shareholders and the corporation equally and may only be raised in a derivative suit." *Baltus-Michaelson v. Credit Suisse First Boston, LLC*, 116 F. App'x 308, 310 (2d Cir. 2004) (summary order). Courts routinely refuse to permit shareholders to recover for alleged diminution in the value of their corporate stock. *See, e.g.*, *Backus*, 2017 WL 3600430, at *16 (finding that "[w]ere Plaintiff to recover directly for the alleged decrease in the value of [the company] as a result of the alleged [wrongdoing by defendant], the damages would be proportionate to [Plaintiff's] ownership interest, and the necessity of a *pro rata* recovery to remedy the alleged harm indicates that [Plaintiff's] claim is derivative") (internal quotation marks omitted); *In re Scudder Mut. Funds Fee Litig.*, No. 04 Civ. 1921(DAB), 2007 WL 2325862, at *11 (S.D.N.Y. Aug. 14, 2007) ("[W]here a corporation suffers an injury and the shareholders suffer solely through a diminution in the value of their stock, the claim belongs to the corporation."); *Serino*, 994 N.Y.S.2d at 69–70 (affirming grant of summary judgment where individual asserted personal claims against accounting firm and sought to recover in his personal capacity for lost earnings, reputational

11

harm, and the lost value of his shares in a company that he alleged had been destroyed by firm's wrongdoing); *O'Neill v. Warburg, Pincus & Co.*, 833 N.Y.S.2d 461, 462 (1st Dep't 2007) ("Because the heart of the alleged injury is the diminution in the value of shares of [the] start-up company in which plaintiffs were minority shareholders, the argument that plaintiffs are entitled to bring a direct action . . . is unavailing under New York law."). Here, Plaintiffs' claims seeking to recover for the lost value of their membership interests are quintessential derivative claims. Because (1) the harm alleged by Plaintiffs has been suffered in the first instance by DHIP, not to them individually, and (2) Plaintiffs cannot demonstrate any injury to themselves independent of any injury to DHIP, Plaintiffs lack the ability to recover in their own right for the lost value of their membership interests.

Similarly, Plaintiffs cannot recover personally for injuries based on the loss of future partner distributions and foregone partner compensation because this claim is by its very nature embedded in the claim that Fifth Third "destroyed" DHIP. Courts consistently reject attempts by shareholders to personally recover for future distributions, lost earnings, and foregone compensation because such claims are necessarily confused and intertwined with the harm inflicted upon the company. *See, e.g.*, *Serino*, 994 N.Y.S.2d at 68–70 (barring individual's attempt to recover lost earnings stemming from accounting firm's alleged wrongdoing that forced company to dissolve, finding individual's claims "inextricably embedded in the derivative claim" for injury to the company); *Manson v. Stacescu*, 11 F.3d 1127, 1130–33 (2d Cir. 1993) (rejecting claim of plaintiff, shareholder and director of corporation that filed for bankruptcy as result of defendants' alleged wrongdoing, attempting to recover in individual capacity for future lost earnings and profits, because "loss of income as president and director is an indirect result of the [alleged wrongdoing of the defendants] and subsequent bankruptcy of the [c]ompany"); *see*

*also Royal Crown Day Care LLC v. Dep't of Health and Mental Hygiene of the City of N.Y.*, No. 10-CV-5442 (MKB), 2012 WL 2992124, at *5 (E.D.N.Y. July 20, 2012) (finding that employees and LLC members lacked standing to recover for the loss of their jobs as a result of defendants' actions since "such a claim is derivative of [the LLC's] damages claim and [plaintiffs'] status as employees"). Plaintiffs contend that they would still be receiving compensation and distributions from DHIP but for Fifth Third's alleged destruction of DHIP. (Am. Compl. ¶¶ 109–10, 118, 125, 136, 146.) Accordingly, Plaintiffs' claims based on foregone future earnings derive directly from the alleged damage done to DHIP and fail as a matter of law.

Like their other claimed damages, Plaintiffs cannot recover for alleged reputational harm because that injury is incidental to the harm that Fifth Third purportedly inflicted upon DHIP. *See, e.g.*, *Serino*, 994 N.Y.S.2d at 70 (rejecting shareholder's damages claim for alleged reputational harm suffered as a result of the destruction of the company); *Hahn v. Stewart*, 5 A.D.3d 285, 286 (1st Dep't 2004) (rejecting former shareholder and CEO's personal claim for reputational harm arising as a result of insider trading scandal since such a claim pled "a wrong to the corporation only, for which a shareholder can only sue derivatively"). Moreover, the alleged reputational damage asserted by Plaintiffs is typically not compensable under claims for breach of contract, fraud, or promissory estoppel. *See, e.g.*, *Karetsos v. Cheung*, 670 F. Supp. 111, 115 (S.D.N.Y. 1987) (noting that damages to reputation "are generally not recoverable for breach of contract in New York State"); *In re Optimal U.S. Litig.*, 837 F. Supp. 2d 244, 266 (S.D.N.Y. 2011) (stating that damage to reputation is not compensable under a fraud claim); *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, 568 F. Supp. 2d 329, 341 (S.D.N.Y. 2008) ("[I]n the absence of egregious circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, forgone

13

business opportunities or damage to business reputation.") (internal quotation marks omitted).

In support of their claims, Plaintiffs principally rely on *Henneberry v. Sumitomo Corp. of America*, 415 F. Supp. 2d 423 (S.D.N.Y. 2006). Plaintiffs' reliance on *Henneberry* is entirely misplaced. In *Henneberry*, defendant-investor Sumitomo Corporation of America ("SCOA") repeatedly promised Henneberry, a majority shareholder of Smartix International Corporation ("Smartix"), that it would procure future investments for Smartix and "not let [Smartix] fail," but that, in the interim, Henneberry would need to make personal bridge loans to Smartix, which Henneberry made in reliance on SCOA's promises. *Henneberry*, 415 F. Supp. 2d at 431. After SCOA reneged on its promises, Smartix became "worthless" and Henneberry, through a proposed amended complaint, sought leave to assert a claim of detrimental reliance. *Id.* at 432–34. In his proposed amended claim, Henneberry sought only reimbursement for the money he personally loaned to Smartix rather than damages for the lost value of his interest in the company. (O'Brien Decl. Ex. 124, ¶¶ 124–45.)[10] The Court granted leave to amend because Henneberry's alleged acts of personal reliance—his provision of bridge loans to Smartix— plausibly caused him injury in his personal capacity independent of any harms experienced by the company. *Henneberry*, 415 F. Supp. 2d at 441–43. Unlike Plaintiffs in this case, Henneberry sought to recover for harm that he personally suffered separate and apart from Smartix, and harm for which Smartix could not have claimed. Here, in contrast, Plaintiffs' alleged acts of personal reliance—the pledge of their membership interests as set forth in the Sanlam Agreement—were not the cause of the loss of their membership interests or any other damage. The option in the Sanlam Agreement—as Plaintiffs concede—never came into being

---

[10] "O'Brien Decl." refers to the Declaration of James S. O'Brien, Jr., dated January 20, 2017, submitted in support of Defendant's motion for summary judgment. (Doc. 88.)

14

and Sanlam had no ability to force Plaintiffs to transfer their membership interests. (Consol. 56.1 ¶¶ 105–09 (acknowledging as undisputed that the option in the Sanlam Agreement was never triggered and Sanlam did not have the right to force Plaintiffs to sell their membership interests).) That is why Plaintiffs and DHIP's other former members were presented with three options during their conference call on August 21, 2013, rather than being subject to Sanlam's ability to exercise its option under the Sanlam Agreement. Plaintiffs chose to enter into the August 2013 Agreement and to "voluntarily Jointly Transfer their Membership Interests to Centre."

As set forth in detail above, the injuries for which Plaintiffs seek redress—the lost value of their interests in DHIP, their loss of future compensation and distributions from DHIP, and reputational harm—derive entirely from the harm allegedly inflicted by Fifth Third on DHIP. Accordingly, Plaintiffs cannot bring the asserted claims on their own behalf, and summary judgment for Fifth Third is appropriate.

## V. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment, (Doc. 85), is GRANTED. The Clerk of Court is respectfully directed to enter judgment for Defendant Fifth Third and close this case.

SO ORDERED.

Dated: March 27, 2018
        New York, New York

_____
Vernon S. Broderick
United States District Judge